**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FIDENCIO MORALES PEREZ, | |
| Petitioner, | No. 1:25-CV-14995 |
| v. | Judge Edmond E. Chang |
| JACOB WALSH, Sheriff for Chase County Detention Center,[1] | |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Fidencio Morales Perez, a citizen of Mexico, is being detained without an opportunity to seek release via a bond hearing in front of an immigration judge. R. 1, Pet. ¶¶ 1, 20, 24.[2] He petitions for a writ of habeas corpus under 28 U.S.C. § 2241, asking the Court to order the government either to give him a bond hearing or to release him immediately.[3] *Id.* ¶ 7. For the following reasons, the Court grants the petition in general, though the relief is the issuance of a conditional writ requiring a bond hearing by a date certain rather than immediate release.

---

[1]Because "the default rule is that the proper respondent is the warden of the facility where the [petitioner] is being held," *Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)), the Court substitutes Jacob Walsh as the proper respondent in this matter pursuant to Civil Rule 25(d). *See* R. 18, Gov't Status Report at 2; R. 22, Joint Status Report.

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[3]This Court has subject matter jurisdiction over this case under 28 U.S.C. § 2241, which applies generally to habeas writs. As explained below, no immigration-specific statute removes the petition from the jurisdictional grant.

## I. Background

Morales Perez is a citizen and native of Mexico who lives in Wheeling, Illinois, after entering the country in 2004 without inspection. Pet. ¶¶ 15, 20. He was issued a notice to appear for removal proceedings in 2017, and he was arrested without a warrant by immigration authorities on December 10, 2025. Gov't Status Report at 1; Pet. ¶ 22. Morales Perez was initially held at the Broadview Detention Center in Broadview, Illinois, before being moved to the El Paso Service Processing Center in El Paso, Texas, on December 11. Gov't Status Report at 1–2. On December 19, the government transferred him to the Chase County Detention Center in Cottonwood Falls, Kansas, where he is currently detained. *Id.* at 2; Joint Status Report. He currently is not scheduled to appear before an immigration judge, Gov't Status Report at 1, and he remains detained without the opportunity for a bond hearing, Pet. ¶ 24.

Morales Perez believes that his mandatory detention is unlawful, so he filed this petition for a writ of habeas corpus when he was detained at Broadview. Gov't Status Report at 1; Pet. ¶¶ 6–7. He contends that the government's decision to detain him under a particular immigration-inspection statute, 8 U.S.C. § 1225(b)(2)(A), amounts to a legal error in violation of the Immigration and Nationality Act as well as the Fifth Amendment's Due Process Clause. Pet. ¶¶ 56–77. Morales Perez also argues that he instead should be given a bond hearing consistent with 8 U.S.C. § 1226(a)(2). *Id.* ¶¶ 6–7, 71.

2

## II. Legal Standard

A petition for writ of habeas corpus is the proper vehicle for petitioners who contend that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas petitioners bear the burden of showing that their detention is unlawful. *Ochoa Ochoa v. Noem*, 2025 WL 2938779, at *2 (N.D. Ill. Oct. 16, 2025) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

## III. Analysis

This case—and many others like it—is a result of last year's decision by the Board of Immigration Appeals, *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). Like here, *Yajure Hurtado* considered whether the government had correctly invoked § 1225(b)(2)(A) to detain an alien, or instead if the alien should be considered detained under § 1226—which would at least give the alien a chance at a bail hearing. *Id.* at 218–20. Before jumping into the merits of the statutory-interpretation debate, it is worth noting that the Board's interpretation of the relevant statutes does not hold outsize weight: "agencies have no special competence in resolving statutory ambiguities. Courts do." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–01 (2024). And courts have an "obligation to independently interpret the statute." *Id.* at 400.

The overwhelming majority of decisions in this district, and across the country, have concluded that petitioners like Morales Perez are entitled to a bond hearing. *See Guartazaca Sumba*, 2025 WL 3126512, at *2 (N.D. Ill. Nov. 9, 2025) (collecting cases); *Barco Mercardo v. Francis*, — F. Supp. 3d —, 2025 WL 3295903, at *4 & nn.22–23

(S.D.N.Y. Nov. 26, 2025) (tallying hundreds of cases granting relief and dozens deny-
ing relief).

The Seventh Circuit also has recently addressed this issue in resolving a stay
motion, concluding that § 1226, not § 1225(b)(2)(A), governs the detention of aliens
who entered the country unlawfully. *Castañon-Nava v. U.S. Dep't of Homeland Sec.*,
— F.4th —, 2025 WL 3552514, at *8–9 (7th Cir. Dec. 11, 2025). At least one court in
this district has regarded this decision, stemming from a motion for a stay pending
appeal, not to be binding precedent. *See Cruz Rodriguez v. Olson*, — F. Supp. 3d —,
2025 WL 3672856, at *5 n.6 (N.D. Ill. Dec. 17, 2025). But *Castañon-Nava* is arguably
binding on this circuit's district courts. *See, e.g.*, *Nat'l Insts. of Health v. Am. Pub.
Health Ass'n*, 145 S. Ct. 2658, 2663–64 (2025) (Gorsuch, J., concurring in part and
dissenting in part) (rejecting argument that "decisions regarding interim relief" lack
precedential effect and instead highlighting that "regardless of a decision's proce-
dural posture, its reasoning … carries precedential weight … on an equivalent rec-
ord"); *Trump v. J. G. G.*, 604 U.S. 670, 684 (2025) (Sotomayor, J., dissenting) (viewing
emergency-docket decision as "creat[ing] new law"). At a minimum, *Castañon-Nava*
carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that
its decision was limited to "the current record." — F.4th —, 2025 WL 3552514, at *8.
But the statutory-interpretation issue that the opinion resolved was one purely of
*law*, and any adjustment to the *factual* record going forward would not likely alter
the legal conclusion. In any event, as explained below, the Court agrees with

4

*Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.

Against the hundreds of district-court cases and *Castañon-Nava*, the government cites 15 district-court cases from across the country that have decided otherwise and denied habeas relief. R. 19, Resp. at 3–4.[4] *Cruz Rodriguez* is representative of those decisions, but the Court respectfully disagrees with its reasoning.

The Court begins with the government's threshold contention: that various statutory provisions, 8 U.S.C. § 1252(a)(2)(B)(ii), (b)(9), and (g), strip federal courts of jurisdiction to consider Morales Perez's petition. Resp. at 2–3. As the Court has previously explained, *see Guartazaca Sumba*, 2025 WL 3126512, at *2–3, none of the cited jurisdiction-stripping provisions apply here. Morales Perez's challenge to "the statutory framework that permits his detention without bail" is not the kind of discretionary decision for which § 1252(a)(2)(B)(ii) bars judicial review. *Demore v. Kim*, 538 U.S. 510, 517 (2003). And the government's decision to impose mandatory detention is too attenuated from "any action taken or proceeding brought to remove an

---

[4]*Cruz Rodriguez*, — F. Supp. 3d —, 2025 WL 3672856; *Ugarte-Arenas v. Olson*, 2025 WL 3514451 (E.D. Wis. Dec. 8, 2025); *Suarez v. Noem*, 2025 WL 3312168 (E.D. Mo. Nov. 28, 2025); *Cortes Alonzo v. Noem*, — F. Supp. 3d —, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025); *Manzo Valencia v. Chestnut*, — F. Supp. 3d —, 2025 WL 3205133 (E.D. Cal. Nov. 17, 2025); *Montoya Cabanas v. Bondi*, 2025 WL 3171331, (S.D. Tex. Nov. 13, 2025); *Mejia Olalde v. Noem*, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025); *Silva Oliveira v. Patterson*, 2025 WL 3095972 (W.D. La. Nov. 4, 2025); *Barrios Sandoval v. Acuna*, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); *Cirrus Rojas v. Olson*, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025); *Garibay-Robledo v. Noem*, No. 1:25-cv-00177 (N.D. Tex. Oct. 24, 2025); *Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Pipa-Aquise v. Bondi*, 2025 WL 2490657 (E.D. Va. Aug. 5, 2025); *Alvarenga Pena v. Hyde*, 2025 WL 2108913 (D. Mass. July 28, 2025).

alien," 8 U.S.C. § 1252(b)(9), to be barred by that provision either. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (plurality opinion) (holding that government's "expansive interpretation of § 1252(b)(9) would lead to staggering results"); *see also id.* at 355 (Breyer, J., dissenting). Nor does 8 U.S.C. § 1252(g) bar judicial review: the provision bars only "three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphases in original) (cleaned up).[5] Morales Perez's challenge to his detention is not any of those. *See Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999). Notably, although the government cites a small minority of decisions denying relief on the merits of the mandatory-detention issue, the government cites *none* supporting its view on jurisdiction. Indeed, the cases cited by the government that considered jurisdictional obstacles concluded that federal jurisdiction was secure. *See, e.g.*, *Cruz Rodriguez*, — F. Supp. 3d —, 2025 WL 3672856, at *2–4.[6]

Reaching the merits, the Court concludes that Morales Perez is entitled to a bond hearing because his detention arises under 8 U.S.C. § 1226(a) instead of 8 U.S.C. § 1225(b)(2)(A). For § 1225(b)(2)(A) to apply, Morales Perez must be an

---

[5]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

[6]The government again does not specify whether it adopts all of the arguments made in its earlier briefing, so for the sake of completeness, the Court refers to its earlier discussion of why failure to exhaust, if raised as an affirmative defense by the government, would fail. *See Guartazaca Sumba*, 2025 WL 3126512, at *3 n.8.

"applicant for admission" who is "seeking admission" and "is not clearly and beyond a doubt entitled to be admitted." *See also* R. 19-1, Gov't's *H.G.V.U.* Resp. Br. at 14–21. Although Morales Perez is an "applicant for admission," he is not "seeking admission" based on that term's plain meaning: he entered the country more than two decades ago and thus does not remain in a state of seeking or requesting admission *into* the country. That is why the Supreme Court has noted that § 1225(b) "applies primarily to aliens seeking *entry* into the United States," whereas § 1226 applies to "aliens *already in the country*." *Jennings*, 583 U.S. at 289, 297 (emphases added).

The government's reading of the statutes violates the bedrock "interpretive principle that every clause and word of a statute should have meaning." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (cleaned up). Although the rule disfavoring surplusage is not absolute, *see Stanley v. City of Sanford*, 606 U.S. 46, 56 (2025), the rule "is strongest when an interpretation would render superfluous another part of the *same* statutory scheme," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (emphasis added). Here, the words "an applicant for admission" and "an alien seeking admission" are a mere seven words apart in § 1225(b)(2)(A), so it belies reason that the words somehow mean the *same* thing when they are (obviously) *different* terms. And as the Court has previously concluded, "seeking admission" "implies some ongoing, *affirmative* action by a person … [to] seek[] or request[] admission *into* the country." *Guartazaca Sumba*, 2025 WL 3126512, at *4 (emphases in original). That does not describe Morales Perez.

7

In response, the government endorses two, contradictory positions. At times, the government seems to argue that the two terms are synonymous. *See, e.g.*, Gov't's *H.G.V.U.* Resp. Br. at 19; *Mejia Olalde*, 2025 WL 3131942, at \*3. But *Cruz Rodriguez* more expansively holds that two terms are *not* synonymous; rather, aliens "seeking admission" are a "superset" in which all "applicants for admission" fall. — F. Supp. 3d —, 2025 WL 3672856, at \*6. Both of the government's positions analogize to § 1225(a)(3), which requires inspection for "[a]ll aliens … who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States."[7] Under this version of the government's view, the use of "otherwise" demonstrates that the two terms are either synonymous or that "applicants for admission" are a specific term that falls within the more general circle of aliens "seeking admission." *See, e.g.*, *Cruz Rodriguez*, — F. Supp. 3d —, 2025 WL 3672856, at \*6. The Court respectfully disagrees with both interpretations for three reasons.

First, the plain meaning of the word "otherwise" does not always define or encapsulate preceding terms. As another court in this circuit has recognized, the term "otherwise" *can* define those words that precede it, but only if the statute provides an enumerated list. *See Singh v. English*, 2025 WL 3713715, at \*3 (N.D. Ind. Dec. 23, 2025) ("[A]s an interpretive doctrine, *ejusdem generis* applies only to specific enumerations—a list of two or more specific examples—that then end in a generic and often

---

[7] *Cruz Rodriguez* also cites to § 1225(a)(5), another provision that refers to "applicant[s] for admission" and their "purposes and intentions … in seeking admission." — F. Supp. 3d —, 2025 WL 3672856, at \*6.

8

broad or linear catchall term."); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008) ("The absence of a list of specific items undercuts the inference embodied in *ejusdem generis* that Congress remained focused on the common attribute when it used the catchall phrase."). So it does not follow that the use of "otherwise" in § 1225(a)(3) suggests that "seeking admission" captures within it all "applicants for admission."

Second, the government's reading, if accepted, requires an unintuitive inference about the structure of the statute. Section 1225 generally addresses "applicants for admission"; indeed, the very first provision of the statute, § 1225(a)(1), sets forth a specific definition of that term. But if the set of "applicants for admission" really is a subset of aliens "seeking admission," then that would mean that Congress defined the narrower term ("applicant for admission") while leaving undefined (for some unknown reason) what would apparently be the crucial, general term ("alien seeking admission") that sweeps more aliens into the mandatory-detention provision. It would be odd for Congress to chart that course, and other principles of statutory interpretation invite a different outcome that avoids this unintuitive result.

Third, the only interpretation that avoids any surplusage is one that divides in part aliens who are "applicants for admission" from those who are "seeking admission." *Cruz Rodriguez* concludes that surplusage is unavoidable. *See* — F. Supp. 3d —, 2025 WL 3672856, at *6. The Court respectfully disagrees. In many cases, both terms will apply to an alien. But in others, one term or the other may not apply. *See Singh*, 2025 WL 3713715, at *4 (offering example of a human-trafficking victim who

9

was involuntarily brought into the United States as an alien who is not "seeking" admission). By treating Morales Perez, who entered the country long ago, as an "applicant for admission" but not as someone who still is actively "seeking admission" into the country, the Court thus gives meaning to both terms. *See Bufkin v. Collins*, 604 U.S. 369, 387 (2025) ("The canon against surplusage can be meaningful when a competing interpretation would avoid superfluity.").

Another surplusage issue remains. The government's position would render superfluous 8 U.S.C. § 1226(c)(1)(E), a provision amended this year by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (codified as amended in scattered sections of 8 U.S.C.). Section 1226(c)(1)(E) mandates custody for aliens who are (i) inadmissible because they unlawfully entered the country, misrepresented a material fact to enter the country, or lacked a valid, unexpired entry document; *and* (ii) were charged with or committed certain enumerated crimes. But the entire provision would be surplusage if all aliens who were applicants for admission are subject to mandatory detention under § 1225(b)(2)(A). And as specifically relevant to Morales Perez, there would be no need to enact legislation requiring detention for unlawful entrants (like Morales Perez) only upon the additional condition that they commit certain crimes if those same unlawful entrants were subject to mandatory detention under § 1225(b)(2)(A) all along.

In response, *Cruz Rodriguez* holds otherwise, explaining that only part of § 1226(c)(1)(E) overlaps with prior provisions. — F. Supp. 3d —, 2025 WL 3672856, at *8. The Court respectfully disagrees. Under the viewpoint that "seeking admission"

is the broad category, it is difficult to see which of the three bases for inadmissibility provides new coverage and thus constitutes a "material change in the immigration laws." *Id.* Section 1226(c)(1)(E)(i) covers any alien who "is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of" title 8. But aliens who are inadmissible are "applicants for admission" because they never have been lawfully admitted. *Cf. Cruz Rodriguez*, — F. Supp. 3d —, 2025 WL 3672856, at *5–6. And because the government argues that "seeking admission" has no distinct meaning, its expansive interpretation of § 1225(b)(2)(A) thus nullifies the entirety of § 1226(c)(1)(E).

And even if it were true that only *part* of § 1226(c)(1)(E) were rendered surplusage, that too would be enough to reject the government's interpretation. The Laken Riley Act reflects the understanding by both Congress and the Executive of § 1225(b)(2)(A) and § 1226. *See Monsalvo v. Bondi*, 604 U.S. 712, 725 (2025) (noting presumption that "new provision should be understood to work in harmony with what has come before," including "longstanding administrative construction"). The parties acknowledge that longstanding agency practice, before the Board's decision in *Yajure Hurtado*, was to detain persons like Morales Perez under § 1226 and thus afford them a bond hearing. Pet. ¶¶ 51–53; *cf.* Gov't's *H.G.V.U.* Resp. Br. at 20.

The Court addresses one more, surplusage-related conclusion from *Cruz Rodriguez*: that the relationship between § 1225(b)(2)(A) and § 1226 is mere "overlap." — F. Supp. 3d —, 2025 WL 3672856, at *7. But *Cruz Rodriguez* also acknowledges that § 1226 is the "general provision" while § 1225(b)(2)(A) is a "specific provision." *Id.* But under the interpretation set forth in *Cruz Rodriguez*, the specific provision

11

has such wide breadth that it swallows most applications of the general provision. The more plausible interpretation—that "seeking admission" has a different meaning than "applicant for admission," so Morales Perez is subject to discretionary detention under § 1226—thus gives more balance between the scopes of the specific § 1225(b)(2)(A) and the general § 1226. *See Jennings*, 583 U.S. at 289, 297. And in any event, the general/specific canon cited in *Cruz Rodriguez* arguably applies only when "the compared statutes are *irreconcilably* conflicting." *See Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692, 698–99 (D.C. Cir. 2014) (emphasis added). But here no irreconcilable conflict exists, only (at most) overlap.

Finally, because resolution of Morales Perez's statutory argument affords him the bond hearing that he seeks, the Court need not discuss the merits of his constitutional claim premised on due process. *See Camreta v. Greene*, 563 U.S. 692, 705 (2011) ("[A] longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." (cleaned up)).

## IV. Conclusion

The Court grants Morales Perez's petition, R. 1. Because the Court holds that Morales Perez's detention under 8 U.S.C. § 1225(b)(2)(A) violates the Immigration and Nationality Act, Morales Perez is entitled to a bond hearing under 8 U.S.C. § 1226(a). *See* 8 C.F.R. §§ 1003.19, 1236.1(c)(8), (d). The Court thus issues a conditional writ of habeas corpus, directing the Respondent, on or before January 15, 2026, either to afford Morales Perez a bond hearing that complies with federal laws and regulations or to release him under reasonable conditions of supervision. *See United*

*States ex rel. Owens v. Duncan*, 2015 WL 5950124, at *2 (N.D. Ill. Oct. 13, 2015) (explaining conditional writs of habeas corpus).

The Court directs the parties to file a status report on or before January 20, 2026, that addresses Morales Perez's release status, whether he received a bond hearing, and the result of that bond hearing.

ENTERED:


     s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: January 7, 2026